David L. Aronoff (State Bar No. 152606)
daronoff@winston.com
Gayle I. Jenkins (State Bar No. 168962)
gjenkins@winston.com
Saul S. Rostamian (State Bar No. 235292)
srostamian@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
(213) 615-1700; Facsimile: (213) 615-1750

Attorneys for Plaintiff,
Counsel for Plaintiff COR Clearing, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COR CLEARING, LLC, a limited liability company, <br><br>　　　　Plaintiff, <br><br>　　vs. <br><br>SHEIK FIDROSH KHAN AKA ABIDA KHAN, an individual, TW RUBAN, INC., a corporation; KENNETH WISE AKA TED WISE, an individual; and DOES 1 through 10, <br><br>　　　　Defendants. | **Case No.** <br>**COMPLAINT OF COR CLEARING, LLC AGAINST SHEIK FIDROSH KHAN AKA ABIDA KHAN, TW RUBAN, INC. AND KENNETH WISE AKA TED WISE FOR:** <br><br>1. **DEFAMATION** <br>2. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS** <br>3. **UNFAIR BUSINESS PRACTICES (BUS. PROF. CODE §§ 17200 ET SEQ.)** <br>4. **INDEMNITY** <br><br>**DEMAND FOR JURY TRIAL** |

1

COMPLAINT

# COMPLAINT

Plaintiff COR Clearing, LLC ("Plaintiff" or "COR Clearing"), by its attorneys, for its Complaint against Defendants Sheik Fidrosh Khan a.k.a. Abida Khan, TW Ruban, Inc. and Kenneth Wise a.k.a. Ted Wise and Does 1-10 (collectively "Defendants"), alleges as follows:

## NATURE OF THIS ACTION

1. Plaintiff is a securities clearing firm. Defendants are purported investment advisers/asset managers, who induced their client investors to trade securities using Plaintiff's stock trading platform. This case centers on Defendants' conduct in causing their client investors to suffer losses, and their subsequent efforts to divert blame and cover up their own culpability by pointing the finger at and indeed defaming Plaintiff for providing the trading platform.

2. Specifically, Defendants used Plaintiff's trading platform to invest their clients' money in the stock of a company known as VGTel, in which Defendants and/or affiliates held interests. Throughout the trading Plaintiff executed trades on behalf of Defendants' clients and provided Defendants' clients with trade confirmations and regular statements. However, Defendants' client investors suffered heavy losses from their investments in the VGTel stock.

3. When the client investors discovered their losses, they naturally confronted their own advisors for answers. In response, Defendants quickly devised a scheme and alleged that it was actually Plaintiff who was responsible for the losses, despite the fact that Plaintiff never solicited trades or rendered investment advice to the clients investors and in fact only executed trades upon receiving instruction to do so and always provided timely trade confirmations and statements to the client investors detailing all activity in VGTel stock.

4. In fact, Defendants took it one step further – they conspired with their client investors to fabricate a tale that it was actually Plaintiff who caused the investor losses even though one of the client investors was himself a member of the Board of Directors of VGTel. This artifice was designed to act as a smokescreen to encourage the client investors to pursue Plaintiff, and would cover up Defendants' own wrongdoing.

5. In sum, Defendants caused their own clients to lose their investments, and then compounded that conduct by using whatever was left of their clients' trust to generate a campaign falsely painting Plaintiff as the real wrongdoer. Defendants went to great lengths and used elaborate means to lay blame on Plaintiff. However, there is no factual or legal support for such blame, and Defendants must be made accountable for their own conduct.

## PARTIES

6. At all times alleged herein, Plaintiff COR Clearing, LLC is a national clearing firm that does business with independent brokers across the country, including California. At all times pertinent herein, Plaintiff also operated an equity trade execution desk that transacted only unsolicited trade orders on behalf of the client investors (referred to herein as the "executions desk").

7. Plaintiff is informed and believes that defendant Sheik Fidrosh Khan aka Abida Khan ("Khan") is and was a resident of the County of Riverside, State of California.

8. Plaintiff is informed and believes that defendant TW Ruban, Inc. is a corporation that does business throughout the United States of America, including hiring representatives such as Defendant Khan in California. Plaintiff is informed and believes that Defendant TW Ruban hired Defendant Khan as an Asset Manager in or around 2013, and that she held that position continuously from date of hire until at

COMPLAINT

least July 2014 when TW Ruban attempted to settle her customers' claims relating to the matters alleged herein.

9. Plaintiff is informed and believes that defendant Kenneth Wise aka Ted Wise is either a resident of County of Los Angeles, State of California or otherwise continuously and systematically avails himself of the benefits of doing business in the State of California by strategically marketing his fraudulent schemes with and through California resident Khan to California residents. Plaintiff is informed and believes that Defendant Wise is an officer, director or managing agent of Defendant TW Ruban, Inc., and used his position as a means to hire representatives such as Defendant Khan in California as a TW employee and defraud California customers whose trust had been gained by Defendant Khan with her assistance and support.

10. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1-10, inclusive, whether individual, corporate or otherwise, and therefore sues said Defendants by such fictitious names. Plaintiff will amend this counterclaim to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereupon alleges, that each of such fictitiously named Defendants is responsible in some manner for the occurrences as herein alleged, that Plaintiff's damages or injuries as herein alleged were proximately caused by Defendants' acts.

11. Plaintiff is informed and believes and upon that basis alleges that Defendants Khan, Wise, TW Ruban, Inc., and Does 1-10 (hereinafter "Defendants") are the agent, employee, successor or assign of each other defendant and each of them except where specifically alleged otherwise, as well as the agents of all Defendants, and at all times herein mentioned, were acting within the course and scope of said agency, employment, succession of interest or assignment.

COMPLAINT

## JURISDICTION

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

## VENUE

13. Venue is proper in this Court under 28 U.S.C. §§ 1391(a) and (c) because a substantial part of the events and omissions giving rise to the claim occurred in this district, Defendant Khan conducts business in this county, Defendants conspired to engage in the acts described herein in this county, and the fraud was directed at customers in the State of California including in this county.

## FACT COMMON TO ALL CLAIMS FOR RELIEF

*Defendants' Backgrounds and Checkered Pasts*

14. Plaintiff is informed and believes that Defendant Khan was a registered representative of Ameritas Investment Corp and Ameritas Insurance from May 2002 until December 2013, including while concurrently an Asset Manager for TW Ruban.

15. Plaintiff is informed and believes that in approximately 2010, Defendant Khan was a self-described equal business owner/partner/shareholder of a company called CDA Wealth.

16. During that time, Defendant Khan, operating under her legal name of "Sheik Khan," admittedly engaged in a financial transaction that ultimately left her and her business colleague jointly and severally liable for a judgment in the United States District Court for the Northern District of Georgia (the "Federal Lawsuit"). On information and belief, while the Federal Lawsuit was pending, Defendant Khan caused papers to be filed in that same federal court that purported to be signed by one Chet Adkins, but which signature was disavowed by Mr. Adkins' attorneys.

17. Defendant Khan was personally named as a defendant in that lawsuit, yet, on information and belief, neither that lawsuit nor the judgment was reported to any regulatory authority or otherwise disclosed by Defendant Khan to those with whom she conducted business.

### *Defendants' First Introduction to Plaintiff and the Fraud That Followed*

18. Around this same time, Defendant Khan became employed by Defendant TW Ruban using the name "Abida Khan." In this capacity, she held herself out to COR Clearing as a financial advisor to multiple investors who sought to trade through Plaintiff.

19. As part of the scheme developed with the remaining defendants, Defendant Khan began introducing her clients to Plaintiff's executions desk, which allowed investors to directly instruct the clearing firm regarding trades from their accounts.

20. Defendants carefully chose which clients to first introduce to Plaintiff – those of very long-standing relationships with Defendant Khan – in order to demonstrate her role as the trusted advisor of these clients.

21. Unbeknownst to Plaintiff, however, Defendants were doing so for the sole purpose of moving Defendant Khan's existing clients from their current investments into a low priced security known as VGTel. Also unbeknownst to Plaintiff, Defendants were doing so in concert with a scheme hatched by Defendant Wise, the indirect owner of over 18% of VGTel stock.

22. Plaintiff is informed and believes, and on that basis alleges, that in the months preceding the opening of accounts at Plaintiff COR Clearing, Defendants devised a scheme to defraud Defendant Khan's clients that Wise, in his role at TW Ruban, caused to be moved to TW Ruban. In addition to Wise being a major stockholder of the targeted stock, VGTel, TW Ruban likewise had a financial interest as a creditor of the company that was never disclosed to Defendant Khan's clients.

23. By and through Defendant Khan, Defendants moved the clients' investments from lower risk vehicles, such as annuities, to open trading accounts to purchase and sell equity securities at Plaintiff's executions desk.

24. Then, after the transition of Defendant Khan's clients to COR Clearing accounts, the client investors transacted in stock of VGTel, both buying and selling.

25. On information and belief, TW Ruban, Wise and Wise's company (Wise & Wise) all held VGTel stock that as of 2012 was nearly worthless. However, once the client investors began trading that stock, the trading price increased in 2013 to six times its price earlier in the same year.

26. During the initial period that the accounts had been opened in their name at COR Clearing and they started receiving confirmations and statements, the client investors believed the stock would continue to soar.

27. On information and belief, when Defendants Khan and Wise had direct contact with many of these same customers, they strongly encouraged and recommended that the customers invest in VGTel while intentionally failing to disclose the financial interest of Wise and TW Ruban in VGTel. Then, Defendants sold their VGTel stock, causing the trading price to decrease and the stock eventually to become nearly worthless.

*Defendants' Elaborate Efforts to Cover Up Their Culpability and Divert Blame to Plaintiff*

28. By early 2014, Defendants' client investors had seen their entire initial investment reduced to mere pennies on the dollar. Once this occurred, the client investors began to look for answers.

29. Naturally, the client investors looked to their financial advisors, the Defendants. However, Defendant Wise had apparently fled to Europe, and his

company Defendant TW Ruban therefore obviously could not respond to any claim. The only one left to answer was Defendant Khan.

30. However, client investors who contacted Defendant Khan were reassured by her, in her position as a TW Ruban Asset Manager, that the stock would rebound, that there was value in the company, and she would advise them of the proper way to manage their accounts.

31. Two customers then informed Plaintiff of Defendants' unauthorized conduct related to opening the accounts and/or making the trades. Appearing to be isolated incidents, Plaintiff reversed the trades in 2014 and absorbed the cost.

32. However, Plaintiff had no knowledge of any of this conduct by Defendants and their client investors.

33. In fact, each of these clients was signed up for the accounts at their correct addresses, and Plaintiff duly notified each of them of both the opening of the account and each transaction.

34. Moreover, after the initial contact in the summer of 2014 by a customer claiming that unauthorized trades had been entered in his account, COR Clearing contacted each customer that had transacted in VGTel to ensure that they were aware of their accounts at COR Clearing and the activity therein.

35. Despite this outreach by COR Clearing, the customers failed to notify COR Clearing that there was any problem with these customer accounts until <u>much more recently</u> *after the stock became nearly worthless*.

36. Defendant Khan then hatched another duplicitous scheme, this time to cover up her prior fraud. Specifically, she falsely accused Plaintiff of wrongdoing, claiming that it was Plaintiff, and not she, who was truly responsible for her client's losses.

37. In executing her plan, Defendant Khan aligned with Francesco Gelsomino, the trustee for one of her client investors and a director of VGTel, to formulate a conspiracy among the investor group to divert blame away from Defendants and onto Plaintiff.

38. Accordingly, Plaintiff was then contacted by counsel for over twenty (20) additional customers who, for the first time, claimed, without any evidence, that Defendants had opened accounts without their authorization and/or submitted fraudulent authorization of trades in VGTel on their behalf.

39. Mysteriously, Mr. Gelsomino even went so far as to claim he was defrauded by Plaintiff, even though he was on the Board of Directors of VGTel, the very company whose securities were traded.

40. However, in conversations leading up to the filing of this action, Mr. Gelsomino, purportedly acting as the "representative" of the investor group, conceded, among other things, that it was Defendants who encouraged the VGTel investment, that nobody at Plaintiff ever encouraged such an investment, and that the investors understood that Plaintiff simply offered the service of executing unsolicited trades initiated by its customers, and never any investment advice.

41. In fact, it later became clear that Defendant Khan and VGTel director Gelsomino were attempting to organize all the client investors as a united front against Plaintiff, as an elaborate effort to convince them that it was Plaintiff, and not she and her co-consiprators including Gelsomino, who is responsible for their substantial losses.

42. Despite a lack of factual or legal authority, on information and belief, Defendant Khan has convinced some client investors that Plaintiff is at fault, causing a smokescreen to hide her own liability.

**First Claim for Relief – Defamation**

**(By Plaintiff Against Defendants Khan, TW Ruban, Wise and Does 1-5)**

9

COMPLAINT

43. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

44. Defendants made several statements to their client investors, who are Plaintiff's customers, claiming that Plaintiff engaged in conduct that made Plaintiff, as opposed to Defendants or the customers' themselves, responsible for their losses.

45. The statements were false.

46. The statements have a natural tendency to injure or cause special damage.

47. Defendants knew the statements were false, or had serious doubts about the truth of the statements, and in fact acted with malice, oppression and fraud in making the defamatory statements. Specifically, it was Defendants or the customers themselves who caused the losses, yet the Defendants disseminated oral and written information claiming it was Plaintiff's conduct that caused the losses. Defendants are keenly aware that Plaintiff operates in a highly regulated industry, and that even making statements alleging improper conduct in the trading of securities has dramatic consequences for Plaintiff. Defendants' conduct is even more reprehensible considering Defendants know that they themselves engaged in improper conduct, yet have laid the blame on Plaintiff in order to avoid liability from their own client investors. Defendants were simply motivated by a desire to implicate Plaintiff or anyone else so that they could potentially evade or cover up their own liability.

48. Defendants' conduct was a substantial factor in causing harm to Plaintiff's business reputation.

**Second Claim for Relief – Intentional Interference with Contractual Relations**
**(By Plaintiff Against Defendants Khan, TW Ruban, Wise and Does 1-10)**

49. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

50. Plaintiff entered into account agreements with each of the customers..

51. Defendants, and each of them, were fully aware of such agreements.

52. However, Defendants, and each of them, intended to and disrupted these contractual relationships by claiming to the customers that their trading losses were somehow caused by Plaintiff, and not by Defendants (or by the customers themselves).

53. This conduct has caused the customers to make claims against Plaintiff, has interfered with Plaintiff's ability to derive any benefit from its customer contracts, and in fact has irreconcilably damaged its standing with the customers at issue.

54. The disruption of and interference with this contractual relationship has damaged Plaintiff in an amount to be proven at trial.

55. Defendants' conduct is malicious, oppressive and harassing in that it was intentionally causing the customers to believe that Plaintiff caused their trading losses, and was intended to cover up Defendants' own misconduct. Defendants' conduct is deserving of punishment in the form of punitive damages to deter such conduct in the future.

**Third Claim for Relief – Unfair Business Practices**

**(Bus. Prof. Code §§ 17200 et seq.)**

**(By Plaintiff Against Defendants Khan, TW Ruban, Wise and Does 1-10)**

56. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

57. Defendants' actions constitute unfair competition and unfair or fraudulent business acts and/or practices within the meaning of California Business & Professions Code, section 17200, et seq.

58. Defendants have engaged in an "unlawful" business acts and practices by engaging in fraudulent transactions that were designed and did constitute a fraud on the stock market and violated multiple securities laws and regulations.

59. Defendants have also engaged in unlawful business practices by intentionallyand falsely claiming that Plaintiff is responsible for the trading losses suffered by Defendants' client investors.

60. Defendants' business acts and practices violated various state laws, including the penal code of the states in which the customers reside and securities regulations that govern applications for securities trading.

61. Defendants' actions constitute unfair competition and unfair or fraudulent business acts and/or practices within the meaning of California Business & Professions Code, section 17200, *et seq*.

62. Defendants' conduct has injured Plaintiff and, unless enjoined, will continue to cause great, immediate, and irreparable injury to Plaintiff.

Plaintiff is entitled to injunctive relief and an order for restitutionary disgorgement of all of Defendants' ill-gotten gains.

## Fourth Claim for Relief – Equitable Indemnity

**(By Plaintiff Against Defendants Khan, TW Ruban, Wise and Does 1-10)**

63. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

64. Plaintiff denies that it is liable for any of the alleged events and/or occurrences and/or damages described above with respect to the activities of the Defendants as described herein.

65. When and if Plaintiff is held liable for the injuries and damages alleged by the customers, Plaintiff is informed and believes that all of the alleged injuries and damages were caused directly, primarily, actively and proximately by Defendants.

66. By reason of the foregoing, when and if customers introduced to Plaintiff through the conduct set forth above seek recovery against Plaintiff, then the responsibility of Plaintiff, if any, is vicarious, passive and secondary in nature and Plaintiff is entitled to judgment over and against Defendants to the extent of the recovery by the customers, in that the actions by Defendants were the active and primarily caused the damages asserted by said customers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff COR Clearing demands judgment as follows:

A. Preliminarily and permanently restraining and enjoining Defendants, their officers, agents, servants and employees, and all persons in acting in concert and participation with them, from submitting trades to Plaintiff on behalf of their customers that are not authorized by the represented client.

B. Permanently restraining and enjoining Defendants, their officers, agents, servants and employees, and all persons in active concert and participation with them, from any further conduct suggesting or tending to suggest that Plaintiff, rather than Defendant, directed any of Defendants' clients to trade in VGTel.

C. Awarding COR Clearing damages, costs, attorneys' fees, and investigator's fees, and an accounting of Defendants' profits attributable to Defendants' unauthorized use of COR Clearing's trademarks.

D. For judgment over and against Defendants, and each of them, for the Fourth Cause of Action for sums expended by Plaintiff to reimburse customers for unauthorized activity in their accounts caused by Defendants by reason of the allegations in Plaintiffs' complaint and any subsequent amendment thereof

E. Directing that Defendants pay to COR Clearing the costs of this action, including their reasonable attorneys' fees incurred herein.

F. Awarding COR Clearing punitive damages in an amount sufficient to punish Defendants.

G. Awarding COR Clearing pre-judgment and post-judgment interest on any monetary awards.

H. Ordering Defendants to disgorge all of their ill-gotten gains pursuant to California Business & Professions Code § 17203.

I. Granting COR Clearing any other and further relief as the Court may deem just and proper.

## Jury Demand

Plaintiff COR Clearing demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: April 6, 2015     By    /s/ David L. Aronoff
David L. Aronoff (State Bar No. 152606)
daronoff@winston.com
Gayle I. Jenkins (State Bar No. 168962)
gjenkins@winston.com
Saul S. Rostamian (State Bar No. 235292)
srostamian@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
(213) 615-1700; Facsimile: (213) 615-1750

Attorneys for Plaintiff COR Clearing, LLC

LA:270235.1

14

COMPLAINT